IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| GARY L. QUIGG, | CV 17-00035-GF-BMM-JTJ |
| Plaintiffs, | |
| vs. | ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| DARRELL BELL, et al., | |
| Defendants. | |

By Order dated November 2, 2017, the Court allowed Plaintiff Gary Quigg to file a Second Amended Complaint on or before January 5, 2018. (Docs. 20, 22.) Mr. Quigg filed an Objection to the Court's Orders on January 8, 2018 (Doc. 23). After Judge Morris ruled on those Objections, Mr. Quigg filed a Second Amended Complaint raising the following claims:

1. Yellowstone County Detention Facility (YCDF) Defendants denied him medical care, subjected him to unsanitary conditions of confinement, and deprived him of property without due process of law (Doc. 25 at 19, ¶¶ 84, 88, 89);

2. Crossroads Correctional Center (CCC) Defendants denied him medical care, retaliated against him for filing this lawsuit, and interrupted his sleep by leaving lights on and subjecting him to noisy conditions (Doc. 25 at 18-19, ¶¶ 85-87);

1

3.  Big Horn County Jail Defendants denied him prescription medication and deprived him of his property without due process of law (Doc. 25 at 20, ¶¶ 89, 90); and

4.  United States Marshal Service (USMS) Defendants denied him of medical care, interfered with his ability to consult with his attorney, failed to assure the mandatory provisions of the contract between the USMS and pretrial holding facilities were followed, and were deliberately indifferent to conditions at pretrial holding facilities (Doc. 25 at 21, ¶¶ 91-95).

## I. PARTIES

### A.  Plaintiff

Mr. Quigg is a prisoner proceeding in forma pauperis and without counsel. According to the docket from Mr. Quigg's federal criminal prosecution, a federal Writ of Habeas Corpus ad Prosequendum was issued for Mr. Quigg on December 4, 2015.  *United States v. Quigg*, 15-CR-147-BLG-SPW, Doc. 10.  On December 29, 2015, he was taken out of state custody at Montana State Prison (MSP) and into the custody of the United States Marshals Service (USMS).  Mr. Quigg was convicted in this Court of conspiracy to possess with intent to distribute methamphetamine, possession of methamphetamine, and distribution of methamphetamine on February 2, 2017 and sentenced on June 30, 2017.  *United*

2

*States v. Quigg*, Criminal Action No. 15-CR-147-BLG-SPW, Doc. 182.

Since Mr. Quigg was incarcerated at MSP prior to going into the custody of the USMS, the Court assumed for purposes of its November 2, 2017 Order that Mr. Quigg was a convicted prisoner at all times relevant to the First Amended Complaint. Therefore, the Court analyzed Mr. Quigg's claims under the Eighth Amendment as opposed to the Fourteenth Amendment which applies to pretrial detainees. *See Kingsley v. Hendrickson*, ___ U.S. ___, 135 S. Ct. 2466, 2473 (2015); *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc), cert. denied, 137 S. Ct. 831 (2017). Mr. Quigg was advised that if he wanted to contest this assessment, he could raise the issue later in this litigation upon a more complete factual record. (Doc. 20, at 8, n. 1.)

On July 2, 2018, Mr. Quigg filed a Petition for Writ of Habeas Corpus in this Court indicating he was arrested for an alleged parole violation on September 15, 2015 and although a preliminary on-site hearing was held on September 25, 2015, his parole hearing was not held and his state parole was not revoked until September 20, 2017. *See Quigg v. Salmonsen*, Civil Action No. 18-cv-77-H-DLC-JTJ, Doc. 1. The law is unclear whether an alleged parole violator should be treated as a convicted prisoner or a pretrial detainee. *See Hill v. County of Montgomery*, 2018 WL 2417839 at *2 (N.D.N.Y. May 29, 2018)(citing cases);

3

*Palmer v. Marion County*, 327 F.3d 588, 592–93 (7th Cir. 2003) ("[T]he confusion about the constitutional predicate for Palmer's claims arises from the uncertainty as to whether a detainee awaiting a hearing on a probation violation can be 'punished' under the Eighth Amendment."); *Weishaar v. County of Napa*, 2016 WL 7242122, at *7, 2016 U.S. Dist. LEXIS 173833 (N.D. Cal. Dec. 15, 2016) (viewing the plaintiff's claims as those of a detainee arising under the Fourteenth Amendment where "there was only an allegation that [the plaintiff] violated his terms of probation"); *Ard v. Rushing*, 2014 WL 12489978, at *2 n.3 (S.D. Miss. Feb. 10, 2014) (concluding that because the plaintiff "was in custody awaiting a probation revocation hearing . . . she was essentially a pretrial detainee").

Out of an abundance of caution the Court will analyze Mr. Quigg's claims arising between September 15, 2015 and February 2, 2017 under the arguably more liberal Fourteenth Amendment standard. *See Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1067–68 (9th Cir. 2016), *cert. denied sub nom. Los Angeles Cty., Cal. v. Castro*, ___ U.S. ___, 137 S. Ct. 831, 197 L. Ed. 2d 69 (2017).

## B. Defendants

Mr. Quigg names the following Defendants from the United States Marshals Office:  Darrell Bell, U.S. Marshal; two Unknown USMS Compliance Auditors;

an Unknown Supervisory Deputy U.S. Marshal; and Deputy U.S. Marshal Dax or Dacks.

He names the following Defendants from Crossroads:  Douglas Fender, Warden; Sarah Phipps, former Crossroads Health Services Administrator; William Crane, Regional Director of Crossroads Medical Department; William Pearson, Nurse Practitioner; Peter Molnar, Nurse Practitioner; and Health Services Administrator Kostail.

Mr. Quigg names the following Defendants from YCDF:  Sheriff Mike Linder; Captain Sam Bofto; Unknown YCDF Medical Director; Unknown YCDF Medical Doctor; Chris Caruso, Physician's Assistant at Riverstone Health Center; and Nurses Vicki and Angie from the Riverstone Health Center.

He names the following two Defendants from Big Horn County Jail: Captain Debbie Cook and an Unknown Nurse.

## II.  SCREENING PURSUANT TO 28 U.S.C. §§ 1915, 1915A

Because Mr. Quigg is a prisoner proceeding in forma pauperis, the Court must review his Second Amended Complaint under 28 U.S.C. §§ 1915, 1915A. Sections 1915A(b) and 1915(e)(2)(B) require the Court to dismiss a complaint filed in forma pauperis and/or by a prisoner against a governmental defendant before it is served if it is frivolous or malicious, fails to state a claim upon which

relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

## A.  Claims against YCDF Defendants[1]

### 1.  Denial of Medical Care

The elements of a pretrial detainee's denial of medical care claim under the due process clause of the Fourteenth Amendment are:  (i) a defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.  *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).

The Court previously found that Mr. Quigg stated a claim for denial of medical care against Nurse Vicki, Nurse Angie, and PA Caruso.  (Doc. 20 at 11.)

---

[1]For purposes of this Order, the Court will presume that Mr. Quigg's claims against the Yellowstone County defendants and Big Horn County defendants arise under § 1983. *See, e.g., Belbachir v. County of McHenry*, 726 F.3d 975, 978 (7th Cir. 2013) (contract between the Federal Bureau of Prisons and a county jail does not automatically transform a state actor into a federal actor).

In his Amended Complaint, Mr. Quigg alleges Defendants Nurse Vicki, Nurse Angie, P.A. Caruso, and Sheriff Linder violated his Eighth and Fourteenth Amendment rights under the U.S. Constitution by not providing him with his prescription medications and/or attempting to have him take ineffective medications.  He alleges Defendants caused him to suffer from severe pain and withdrawals from his medications.  (Doc. 25 at 17, ¶ 84.)  Defendants Nurse Vicki, Nurse Angie, P.A. Caruso, and Sheriff Linder will be required to respond to these claims.

### 2.  Sanitary Conditions

To state a claim that the conditions of confinement within the YCDF violated his rights under the Fourteenth Amendment, Mr. Quigg must allege that (1) a defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries.  *Castro*, 833 F.3d at 1071. With respect to the third element, the defendant's conduct must

be "objectively unreasonable." *Id. citing Kingsley*, 135 S.Ct. at 2473. This is a standard that is something "more than negligence but less than subjective intent—something akin to reckless disregard." *Castro*, 833 F.3d at 1071.

In the Eighth Amendment context, which informs the analysis under the Fourteenth Amendment, courts have held that "only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citation omitted). "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred." *Id.* "The more basic the need, the shorter the time it can be withheld." *Id.* (citations omitted).

Mr. Quigg again raises claims regarding unsanitary conditions at YCDF. He alleges he was confined in filthy holding cells with blood and fecal material on the floors, a strong urine smell, toilet paper on the walls and ceilings, mold growing on the walls and in the vents, and no signs of ever being disinfected or cleaned. He alleges he was required to sleep on thin, plastic coated sleeping pads and the showers had black mold on the walls and ceilings and vents plugged with mold. He also contends black gnats lived, hatched, and spread throughout the jail. (Doc. 25 at 11-12, ¶¶ 55-59.)

8

The Court found in its prior Order that Mr. Quigg failed to allege that he was subjected to "severe or prolonged" unsanitary conditions. *See Anderson v. County of Kern*, 45 F.3d 1310, 1314 (1995). According to his First Amended Complaint, Mr. Quigg was incarcerated at YCDF for at most 70 days over the course of approximately a year and a half. He was never held there for more than 26 days at a time. (Doc. 13.) He makes no allegations in his Second Amended Complaint that a specific defendant made an intentional decision with respect to the conditions under which he was confined; those conditions put him at a substantial risk of suffering serious harm; reasonable available measures were not taken to abate that risk; and by not taking such measures, a defendant caused Mr. Quigg to suffer injury.

Mr. Quigg presented no facts sufficient to demonstrate that the alleged conditions were so substantial as to affect his ability to maintain his health. *Anderson*, 45 F.3d at 1314. He has not alleged facts sufficient to allege that any Defendant caused him to be deprived of "life's necessities" with deliberate indifference to his health or safety. *Farmer*, 511 U.S. 837; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Court previously found that these allegations insufficient to state a claim upon which relief may be granted. Mr. Quigg has not set forth sufficient additional information to change the Court's prior analysis.

9

These claims will be recommended for dismissal.

### 3. Deprivation of Property

Mr. Quigg alleges Defendants Linder and Bofto violated his rights when his property was lost. Specifically, he alleges that when he was transferred to the Big Horn County Jail, some of his property was left at YCDF. When he returned to YCDF, he asked for his property and was advised they did not have a record of what happened to his property. (Doc. 25 at 13-14.) He claims Defendants Linder and Bofto violated his Fourteenth Amendment rights because they had no records, policies, or guidelines to prevent loss, destruction, or theft by staff. (Doc. 25 at 19-20, ¶ 89.)

Prisoners have a protected interest in their personal property. *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974). Where a prisoner alleges the deprivation of property was caused by the unauthorized negligent or intentional action of a prison official, he cannot state a constitutional claim where the state provides an adequate post-deprivation remedy. *See Zinermon v. Burch*, 494 U.S. 113, 129–32 (1990); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Daniels v. Williams*, 474 U.S. 327, 328 (1986)(negligent act of an official does not implicate the due process clause). The Montana Tort Claims Act provides an adequate post-deprivation remedy. *See, e.g.*, Mont. Code Ann. § 2–9–101(1) (2007). Thus,

10

to the extent Mr. Quigg alleges his property was lost or stolen, he has an adequate state post-deprivation remedy and cannot state a due process claim.

An authorized, intentional deprivation of property (one carried out pursuant to established state procedures), is actionable under the Due Process Clause. *Hudson*, 468 U.S. at 532, n. 13 (*citing Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982)); *Piatt v. McDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985).  But Mr. Quigg has only alleged unauthorized negligent or intentional takings of his property.  He was specifically advised of this standard and failed to allege that any taking of his property was an authorized, intentional deprivations.  This claim will be recommended for dismissal.

**B.  Claims against Crossroads Defendants**

The Crossroads Defendants are private persons.  Crossroads is a private prison where Mr. Quigg was incarcerated under an agreement with the USMS. Accordingly, although the Crossroads' employees are private individuals, they are considered federal actors rather than state actors for purposes of this case.  *Pollard v. GEO Group, Inc.*, 607 F.3d 583, 588–89 (9th Cir. 2010), *rev'd on other grounds sub nom. Minneci v. Pollard*, 565 U.S. 118 (2012); *see also Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 940–41 (1982); *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011).

11

Normally an action for constitutional violations committed by federal actors can be brought under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) however, the United States Supreme Court has made clear that a prisoner cannot assert an Eighth Amendment claim based *Bivens* for damages against private prison employees because state tort law provides an "alternative, existing process" capable of protecting the constitutional issues at stake. *Minneci*, 565 U.S. at 125.

Mr. Quigg raises claims of denial of medical care, retaliation, and conditions of confinement (leaving lights on) against Crossroads employees. Mr. Quigg can raise state law tort claims on all of these issues. He claims that he has no available remedy to file a medical care claim because prisoners are prevented from utilizing the medical-legal procedures under the Montana Medical Legal Panel Act, Mont. Code Ann. § 27-6-105. But the requirements of this Act do not apply to claims "brought by an inmate of a correctional facility against a health care provider arising from a health care service provided by the health care provider within the facility." Mont. Code. Ann. § 27-6-105(2). In addition, Defendants Fender, Phipps, Pearson, Molnar, and Kostail are not "health care providers" as defined by the Medical Legal Panel Act. *See* Mont. Code Ann. §§ 27-6-103(3)("health care provider" means "a physician, a dentist, a podiatrist, or a

12

health care facility"); *see Greenwood v. Park County*, 2008 WL 11414564 (D. Mont. March 7, 2008).

Montana law specifically provides that a person detained by the State has the right to adequate medical care. *Wilson v. State*, 2010 MT 278, ¶ 28, 358 Mont. 438, 249 P.3d 28. The State violates this right when it is deliberately indifferent to the medical needs of a detainee. *Walker v. State*, 2003 MT 134, ¶¶ 55-56, 316 Mont. 103, 68 P.3d 872. Mr. Quigg therefore has available remedies under state tort law. As such, all claims against the Crossroads Defendants will be recommended for dismissal.

## C. Claims against Big Horn County Jail Defendants

### 1. Paragraph 89–Deprivation of Property

Mr. Quigg alleges Defendant Cook left some of his property behind at YCDF when she transported him to the Big Horn County Jail in violation of his Fourteenth Amendment right to due process. (Doc. 25 at 19, ¶ 89.) As set forth above, at most Mr. Quigg has only alleged an unauthorized negligent or intentional taking of his property for which he has a state law remedy. *See Zinermon*, 494 U.S. at 129–32; *Hudson*, 468 U.S. at 533; *Daniels*, 474 U.S. at 328; Mont. Code Ann. § 2–9–101(1). Mr. Quigg was specifically advised of this standard in the Court's prior Order and he has not alleged that Defendant Cook

was actually responsible for the loss of his property or that his property loss was an authorized, intentional deprivation.  This claim will be recommended for dismissal.

### 2.  Paragraph 90–Denial of Medical Care

Mr. Quigg was housed at the Big Horn County Jail in Basin, Wyoming from February 10, 2017 to February 16, 2017.  (Doc. 13 at 14.)  He alleges that while at YCDF in February 2017, the jail doctor issued a prescription for a mild pain reliever and this medication was given to Defendant Cook when she transported him to the Big Horn County Jail.  He contends an unknown Big Horn County Jail Nurse refused to give him his medications.  She allegedly called the USMS in Billings and received permission to not give Mr. Quigg his prescription medications.  He alleges that as a result he continued to suffer severe pain for the period while he was confined at the Wyoming facility.  (Doc. 25 at 14-15.)

Mr. Quigg was convicted in Federal Court on February 2, 2017.  *United States v. Quigg*, Criminal Action No. 15-CR-147-BLG-SPW, Doc. 182. Accordingly, any claim arising after February 2, 2017 will be construed under the Eighth Amendment.  The Court finds Mr. Quigg's allegations insufficient to state an Eighth Amendment claim for denial of medical care against the Big Horn County Defendants.  Mr. Quigg was held at Big Horn County Jail for at most six

days. Further, the nurse apparently received permission to not dispense the pain medications for those six days. When a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference"). Given the short duration of his stay at the Big Horn County Jail, the Court finds that Mr. Quigg failed to allege sufficient facts to establish a denial of medical care at this facility. This claim will be recommended for dismissal.

### 3. Paragraph 71–Sleep Deprivation

In his First Amended Complaint, Mr. Quigg alleged his rights under the Fifth, Eighth, and Fourteenth Amendments were violated by Big Horn County Defendants who allegedly inflicted physical and psychological torture by means of sleep deprivation. He alleged that while housed at the Big Horn County Jail from February 10, 2017 through February 16, 2017 the lights were left on in the cells 24 hours per day. (First Amended Complaint, Doc. 13 at 14.) He sets forth similar facts in his Second Amended Complaint (Doc. 25 at 15, ¶ 71) but did not raise a specific legal claim regarding this issue. Regardless, as the Court found in its previous Order, these allegations fail to state a claim.

15

Again, this claim arises under the Eighth Amendment.  In that context, the Ninth Circuit has found that requiring an inmate to live for six months in a prison unit where there was constant illumination was unconstitutional.  *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996), as amended on denial of reh'g, 135 F.3d 1318 (9th Cir. 1998)(internal citations and quotations omitted).  But Mr. Quigg's allegations do not reach that extreme level.  While prolonged exposure to constant illumination could state a claim, Mr. Quigg was only housed at the Big Horn County Jail for six days.  There is insufficient case law to clearly establish that subjecting a prisoner to constant illumination for no more than six days violates the Eighth Amendment.  *See Johnson v. Lewis*, 217 F.3d 726, 732 (9th Cir. 2000) (holding that "modest deprivations can also form the objective basis of a violation, but only if such deprivations are lengthy or ongoing") (*citing Keenan*, 83 F.3d at 1090–91).  Any claims regarding sleep deprivation at the Big Horn County Jail will be recommended for dismissal.

### D.  Claims Against United States Marshal Defendants

#### 1.  Paragraph 91–Denial of Medications

Mr. Quigg alleges that Defendant Supervisory U.S. Marshal violated his Fourteenth Amendment rights by allowing the Big Horn County Jail Nurse to withhold his medication and he suffered pain as a result.  (Doc. 25 at 20, ¶ 91.)

16

For the reasons set forth above regarding the alleged denial of medical care at Big Horn County Jail, the Court finds that Mr. Quigg has failed to state a claim against the Supervisory U.S. Marshal who allegedly allowed a nurse at Big Horn County Jail to not give Mr. Quigg the mild pain reliever prescribed at YCDF for the six days while Mr. Quigg was housed at Big Horn County Jail.

### 2.  Paragraph 92--Access to Attorneys

Mr. Quigg alleges Defendant Bell and the Unknown Supervisory U.S. Marshal violated his Sixth and Fourteenth Amendment rights when they transferred him from YCDF to Crossroads because it interfered with and prevented his ability to consult with his attorney, investigator, and potential witnesses in his underlying criminal proceedings.  (Doc. 25 at 20, ¶ 92.)

In *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the United States Supreme Court held that,

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Heck*, 512 U.S. at 487.

A finding that Mr. Quigg had such inadequate access to his lawyers during

17

his criminal proceedings that it inhibited his ability to effectively prepare for trial and resulted in ineffective assistance of counsel would necessarily imply the invalidity of his conviction.  As Mr. Quigg's conviction has not been reversed, declared invalid, expunged, or called into question, any claims challenging his conviction or sentence are barred by *Heck*.

Mr. Quigg indicates that he merely seeks declaratory and injunctive relief to prevent the perpetuation of such transfers.  (Doc. 25 at 20, ¶ 92.)  But Mr. Quigg's federal criminal proceedings have concluded.  Therefore, all claims for injunctive relief are not moot.  *See Prieser v. Newkirk*, 422 U.S. 395, 402-03 (1975); *Johnson v. Moore*, 948 F.3d 517, 519 (9th Cir. 1991) (per curiam).

These claims will be recommended for dismissal.

### 3.  Paragraphs 93-95–U.S. Marshals

Mr. Quigg alleges Defendant Dax violated his rights when he failed to follow the verbal order issued by Judge Ostby to resolve the matter of YCDF nurses denying Mr. Quigg his prescription medications.  (Doc. 25 at 21, ¶ 93.)  He contends the USMS Auditors failed to assure that the mandatory provisions of the contracts with the pretrial holding facilities were followed which resulted in the violations Mr. Quigg's rights to adequate medical care and clean and sanitary housing.  (Doc. 25 at 21, ¶ 94.)  He claims the USMS violated his due process

rights by failing to know the conditions into which they placed detainees.  (Doc.
25 at 21.)

The Court will analyze Mr. Quigg's allegations against the USMS
defendant under *Bivens.*  "Because vicarious liability is inapplicable to *Bivens* and
§ 1983 suits, a plaintiff must plead that each government-official defendant,
through the official's own individual actions, has violated the Constitution."
*Iqbal*, 556 U.S. at 676; *see also Jones v. Community Redevelopment Agency of
City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (even pro se plaintiff must
"allege with at least some degree of particularity overt acts which defendants
engaged in" in order to state a claim).  Mr. Quigg was advised in the Court's prior
Order that he had to allege sufficient "factual content that allows the court to draw
the reasonable inference that the defendant is liable for the misconduct alleged."
(Doc. 20 at 23 citing *Iqbal*, 556 U.S. at 678.)

Mr. Quigg's Second Amended Complaint fails to meet this standard with
regard to the USMS Defendants.  Mr. Quigg does not include any factual content
to suggest that a USMS Defendant personally participated in, directed, or caused
him to suffer any constitutional injury.  Instead, he merely claims that the USMS
defendants knew or should have known about alleged constitutional deficiencies.
He does not explain how these Defendants violated his constitutional rights

19

through their "own misconduct."  *See Iqbal*, 556 U.S. at 677.  These claims will be recommended for dismissal.

### E.  Claims not raised in Amended Complaint

In his First Amended Complaint Mr. Quigg raised claims regarding violations of his privacy rights by an unknown Big Horn County Nurse and that YCDF Defendants failed serve nutritious and healthy meals and were engaged in "price gouging."  (Doc. 13 at 13, 16.)

He raised no such claims in his Second Amended Complaint.  The filing of an amended complaint replaces the original complaint, and the original complaint no longer serves a function in the case.  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).  Therefore, all claims not raised in the second amended complaint will be recommended for dismissal.

## III.  CONCLUSION

The Court finds that Mr. Quigg has stated a claim for denial of medical care against Defendants Nurse Vicki, Nurse Angie, PA Caruso, and Sheriff Linder. These Defendants will be required to respond to Mr. Quigg's denial of medical care claims.

Mr. Quigg's remaining claims fail to state a federal claim upon which relief may be granted.  The Court has considered whether Mr. Quigg could further

amend the complaint to state a claim upon which relief can be granted. "Valid

reasons for denying leave to amend include undue delay, bad faith, prejudice, and

futility." *California Architectural Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d

1466, 1472 (9th Cir. 1988); *see also Klamath-Lake Pharm. Ass'n v. Klamath Med.*

*Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that while leave to

amend shall be freely given, the court does not have to allow futile amendments).

A party's "repeated failure to cure deficiencies" constitutes "a strong indication

that the [party] has no additional facts to plead" and "that any attempt to amend

would be futile[.]" *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981,

988, 1007 (9th Cir. 2009) (internal quotation marks omitted) (upholding dismissal

of complaint with prejudice when there were "three iterations of [the]

allegations—none of which, according to [the district] court, was sufficient to

survive a motion to dismiss"); *see also Simon v. Value Behavioral Health, Inc.*,

208 F.3d 1073, 1084 (9th Cir. 2000) (affirming dismissal without leave to amend

where plaintiff failed to correct deficiencies in complaint, where court had

afforded plaintiff opportunities to do so, and had discussed with plaintiff the

substantive problems with his claims), *amended by* 234 F.3d 428, *overruled on*

*other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007);

*Plumeau v. Sch. Dist. # 40 Cnty. of Yamhill*, 130 F.3d 432, 439 (9th Cir. 1997)

21

(denial of leave to amend appropriate where further amendment would be futile).

Here, Mr. Quigg was advised that his allegations were insufficient to state a claim and he was provided with the relevant legal standards to consider in drafting his amended pleading.  His second amended complaint, however, fails to add sufficient relevant facts to proceed on the remaining claims, suggesting that there are no additional facts to plead.  Thus, the Court finds that amendment would be futile and will recommend that leave to amend be denied.

Accordingly, the Court issues the following:

## ORDER

1.  Pursuant to Fed. R. Civ. P. 4(d), the Court will request Defendants Nurse Vicki, Nurse Angie, PA Caruso, and Sheriff Linder to waive service of summons of Mr. Quigg's Second Amended Complaint by executing, or having counsel execute, the Waiver of Service of Summons.[2]  The Waivers must be returned to the Court within **thirty (30) days of the entry date of this Order as reflected on the Notice of Electronic Filing**.  If these Defendants choose to return the Waiver of Service of Summons, their answer or appropriate motion will be due within **60 days of the entry date of this Order as reflected on the Notice of Electronic Filing**, pursuant to Fed. R. Civ. P. 12(a)(1)(B).  *See also* 42 U.S.C. § 1997e(g)(2).

---

[2]Defendants recommended for dismissal need not respond at this time.

2.  The Clerk of Court shall forward the documents listed below to

Defendants Nurse Vicki, Nurse Angie, and PA Caruso at Riverstone Health Clinic

123 South 27th Street, Billings, MT 59101, and to Sheriff Linder, P.O. Box

35017, Billings, MT 59107:

    *    Amended Complaint (Doc. 13);
    *    Court's Order of November 2, 2017 (Doc. 20);
    *    Second Amended Complaint (Doc. 25);
    *    this Order;
    *    a Notice of Lawsuit & Request to Waive Service of Summons; and
    *    a Waiver of Service of Summons.

Counsel for Defendants must file a "Notice of Appearance" as a separate

document at the time an Answer or Rule 12 motion is filed.  See D. Mont. L.R.

12.2.

3.  Any party's request that the Court grant relief, make a ruling, or take an

action of any kind must be made in the form of a motion, with an appropriate

caption designating the name of the motion, served on all parties to the litigation,

pursuant to Federal Rules of Civil Procedure 7, 10, and 11.  If a party wishes to

give the Court information, such information must be presented in the form of a

notice.  The Court will not consider requests made or information presented in

letter form.

4.  Mr. Quigg shall not make any motion for default until at least seventy

(70) days after the date of this Order.

5.  Pursuant to Local 26.1(d) "no party may begin discovery until a scheduling order has been issued."

6.  At all times during the pendency of this action, Mr. Quigg must immediately advise the Court and opposing counsel of any change of address and its effective date.  Failure to file a notice of change of address may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

Further, the Court issues the following;

## RECOMMENDATIONS

1.  Mr. Quigg's claims against the employees of Crossroads including his medical care claims, conditions of confinement claims (meals, sleep deprivation), and retaliation claims against Defendants Fender, Phipps, Crane, Pearson, Molnar, and Kostail (Doc. 25 at 18-19, ¶¶ 85-87) should be DISMISSED pursuant to *Minneci v. Pollard*, 565 U.S. 118 (2012).

2.  Mr. Quigg's claims that Defendants Linder and Bofto subjected him to unsanitary conditions of confinement at YCDF (Doc. 25 at 19, ¶ 88) should be DISMISSED.

4.  Mr. Quigg's claims that Defendants Linder, Bofto, and Cook deprived him of property without due process of law (Doc. 25 at 19, ¶ 89) should be

DISMISSED.

5.  Mr. Quigg's claims that Defendant Unknown Basin Wyoming Jail Nurse denied him prescription medications (Doc. 25 at 20, ¶ 90) should be DISMISSED.

6.  Mr. Quigg's claims that Defendant Supervisory U.S. Marshal allowed the Basin Jail Nurse to deny him prescribed medications (Doc. 25 at 20, ¶ 91) should be DISMISSED.

7.  Mr. Quigg's claims that Defendants Bell and Unknown Supervisory U.S. Marshal transferred him from YCDF to CCC which interfered with his ability to consult with his attorney (Doc. 25 at 20, ¶ 92) should be DISMISSED.

8.  Mr. Quigg's claims that Deputy United States Marshal Dax deprived him of prescription medications (Doc. 25 at 21, ¶ 93) should be DISMISSED.

9.  Mr. Quigg's claims that Defendant USMS Auditors and Defendants from the USMS failed to assure that the mandatory provisions of the contract between pretrial holding facilities were followed and were deliberately indifferent to conditions at those pretrial holding facilities (Doc. 25 at 21, ¶¶ 94-95) should be DISMISSED.

10.  Mr. Quigg's claims raised in his First Amended Complaint regarding violations of his privacy rights by an unknown Big Horn County Nurse and that YCDF Defendants failed serve nutritious and healthy meals and were engaged in

25

"price gouging" (Doc. 13 at 13, 16) should be DISMISSED.

11.   Defendants Darrell Bell, U.S. Marshal; two Unknown USMS Compliance Auditors; an Unknown Supervisory Deputy U.S. Marshal; Deputy U.S. Marshal Dax or Dacks; Douglas Fender, Warden; Sarah Phipps, former Crossroads Health Services Administrator; William Crane, Regional Director of Crossroads Medical Department; William Pearson, Nurse Practitioner; Peter Molnar, Nurse Practitioner; Health Services Administrator Kostail; Captain Sam Bofto; Unknown YCDF Medical Director; Unknown YCDF Medical Doctor; Captain Debbie Cook and an Unknown Nurse from the Big Horn County Jail should be DISMISSED.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Quigg may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[3]  28 U.S.C. § 636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

---

[3]Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)."  Therefore, since Mr. Quigg is being served by mail, he is entitled an additional three (3) days after the period would otherwise expire.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 26th day of December, 2018.


_____*/s/ John Johnston*_____

John Johnston
United States Magistrate Judge

27

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| GARY L. QUIGG,<br><br>        Plaintiffs,<br><br>    vs.<br><br>DARRELL BELL, et al.,<br><br>        Defendants. | CV 17-00035-GF-BMM-JTJ<br><br><br>Rule 4 Notice of a Lawsuit and<br>Request to Waive Service of<br>Summons |

TO:

Nurse Vicki, Nurse Angie, and PA Caruso      Yellowstone County Sheriff Mike Linder
Riverstone Health Clinic                                    P.O. Box 35017
123 South 27th Street                                        Billings, MT 59107
Billings, MT 59101

A lawsuit has been filed against you in this Court under the number shown

above.  A copy of the Second Amended Complaint is attached.

This is not a summons, or an official notice from the court.  It is a request

that, to avoid the cost of service by the U.S. Marshal's Service, you waive formal

service of a summons by signing and returning the enclosed waiver.  To avoid

these expenses, you must file the signed waiver within 30 days from the date

shown below, which is the date this notice was sent.

If you file the signed waiver, the action will then proceed as if you had been

served on the date the waiver is filed, but no summons will be served on you and

1

you will have 60 days from the date this notice is sent (see the date below) to

answer the claims of Mr. Quigg contained in the Second Amended Complaint.

If you do not return the signed waiver within the time indicated, the Court

will order the U.S. Marshal's Service to serve the summons and Second Amended

Complaint on you and may impose the full costs of such service.

Please read the statement below about the duty to avoid unnecessary

expenses.

DATED this 26th day of December, 2018.


＿＿＿＿_/s/ John Johnston_＿＿＿＿＿＿＿＿

John Johnston
United States Magistrate Judge

## Duty to Avoid Unnecessary Expenses of Serving a Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does not include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court.  By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| GARY L. QUIGG, | CV 17-00035-GF-BMM-JTJ |
| Plaintiffs, | |
| vs. | Rule 4 Waiver of the Service of Summons |
| DARRELL BELL, et al., | |
| Defendants. | |

TO:   The U.S. District Court for the District of Montana

The following Defendants acknowledge receipt of the request to waive service of summons in this case.  Defendants also received a copy of the Second Amended Complaint.  I am authorized by the following Defendants to agree to save the cost of service of a summons and an additional copy of the Second Amended Complaint in this action by not requiring that the following individual be served with judicial process in the case provided by Fed.R.Civ.P. 4:

_____,          _____,

_____,          _____,

_____,          _____,

_____,          _____,

The above-named Defendants understand that they will keep all defenses or

1

objections to the lawsuit, the Court's jurisdiction, and the venue of the action, but waive any objections to the absence of a summons or of service.

Defendants also understand that they must file and serve an answer or a motion under Rule 12 within 60 days from the date when the Request for Waiver of Service of Summons was filed and if they fail to do so default judgment will be entered against them.

Date: _____

_____
(Signature of the attorney
or unrepresented party)

_____
(Printed name)

_____
(Address)

_____
(E-mail address)

_____
(Telephone number)

2